HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROLAND L. STEVENS and SHIRLEY J. STEVENS, husband and wife,

Plaintiffs,

v.

CBS CORPORATION, et al.,

Defendants.

CASE NO. 3:11-cv-06073

ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
[Dkt. #s 141, 145, and 147]

THIS MATTER is before the Court on Defendants' Motions for Summary Judgment. (CBS[1] Corporation's MSJ, Dkt. #141, Warren Pumps, LLC's MSJ, Dkt. #145, and Cleaver-Brooks, Inc.'s MSJ, Dkt. #147). As the three individual motions raise substantially the same issues, they will be addressed together when appropriate. Because Plaintiffs have raised genuine issues of material fact, Defendants' motions are DENIED.

**I.   INTRODUCTION**

Plaintiff Roland Stevens served as a boilermaker in the U.S. Navy from 1954 until 1974. He inspected, maintained, repaired, and overhauled boilers and their associated pumps, valves,

---

[1] Defendant CBS Corporation is Westinghouse's successor. It is referenced as "Westinghouse" in this Order.

forced draft blowers, and other equipment on dozens of Navy vessels. After retiring from the Navy, he continued to do similar work at the Puget Sound Naval Shipyard (PSNS) until 1988. Mr. Stevens was diagnosed with mesothelioma in November 2011. Stevens[2] alleges that, throughout his career, he contacted asbestos-containing materials in Defendants' equipment: Westinghouse marine turbines and forced draft blowers; various Warren pumps; and Cleaver-Brooks boilers.

Each Defendant argues that Stevens' evidence does not raise a genuine issue of material fact because the evidence linking his disease to its products is speculative. Warren and Cleaver-Brooks argue that Stevens cannot prove that the alleged exposure was a substantial factor in causing his illness. Additionally, Westinghouse offers a government contractor defense. Finally, all three Defendants argue that summary judgment should be granted because Stevens assumed the risks associated with the inhalation of asbestos.

Stevens argues that his evidence does raise a material issue of fact as to whether he contacted Defendants' asbestos-containing products and whether it was a substantial factor in his disease. He also argues that the government contractor defense does not apply and that issues of material fact remain regarding the assumption of risk defense.[3]

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to

---

[2] All factual allegations are specific to Roland Stevens. Therefore, for the sake of simplicity, Plaintiffs are referred to as "Stevens" or "he" even though all claims are made jointly by Roland and Shirley Stevens.

[3] Stevens argue in the alternative for a continuance based on an outstanding deposition that is scheduled. Because Defendants' motions are denied, the request for the continuance is DENIED as moot.

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT
[DKT. #S 141, 145, AND 147] - 2

summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Choice of Law

Westinghouse argues that federal maritime law governs this case because the alleged asbestos exposure is based on the maintenance and repair of naval vessels on navigable waters. Stevens argues that the case is governed by Washington state law because it is based on diversity jurisdiction. The remaining Defendants argue under Washington state law.

A party seeking to invoke maritime jurisdiction over a tort claim "must satisfy conditions both of location and of connection with maritime activity. The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters." *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011) (citations and internal quotations omitted). This test is "satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Id*. at 466. Here, Plaintiffs allege that at least some of Stevens' asbestos exposure occurred while aboard Navy vessels "at sea." Marks Decl., Dkt. #142, Exh. D, 122:23-24. The locality test is satisfied.

The connection test requires that the "type of incident involved" have "a potentially disruptive impact on maritime commerce," and that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id*. at 463. Here, the second prong is also satisfied. *See Connor*, 799 F. Supp. 2d at 463 (finding the connection test was met where a plaintiff who "served aboard Navy vessels" had a "job to maintain equipment that was integral to the functioning of the ship"). Stevens alleged that he worked on Westinghouse equipment while under way, which was certainly essential to the proper functioning of the vessels he served aboard. Therefore, Stevens' exposure bears significant connection maritime activities, and maritime law applies in this case.

After determining that maritime jurisdiction applies, the Court then applies a choice of law analysis to determine which substantive law to apply. "Whether a state law may provide a rule of decision in an admiralty case depends on whether the state rule 'conflicts' with the substantive principles of federal admiralty law. [S]tate law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with [federal] maritime law." *Calhoun v. Yamaha Motor Corp., U.S.A*., 40 F.3d 622, 627 (3d Cir. 1994) *aff'd*, 516 U.S. 199 (1996) (citations omitted). Maritime law reflects the prevailing view of the law of the land. *East River S.S. Corp. v. Transamerica Delaval, Inc*., 476 U.S. 858, 864 (1986).

Westinghouse argues that maritime law applies, but it does not identify any inconsistencies between maritime and Washington state law. In fact, Westinghouse cites a Washington State Supreme Court case, *Braaten v. Saberhagen Holdings, Inc.*, 165 Wash.2d 373 (2008), as representative of the majority rule nationwide. Westinghouse argues that under maritime law manufacturers of "bare-metal" equipment are not liable for materials later added to the equipment, even if they knew that it would be added. CBS' MSJ, Dkt. #141 at 8. Under

Washington state law, "a manufacturer may not be held liable in common law products liability or negligence for failure to warn of the dangers of asbestos exposure resulting from another manufacturer's insulation applied to its products after sale of the products to the navy." *Braaten*, 165 Wash. 2d at 380 (citing *Simonetta v. Viad Corp.*, 165 Wash. 2d 341 (2008). In other words, Westinghouse argues both that maritime law should apply, and that maritime law is consistent with Washington state law. Therefore, there is no conflict, and Washington state substantive law applies.

### C. Evidence of Stevens' Work with Defendants' Asbestos-Containing Products

Defendants argue that Stevens cannot raise questions of material fact as to whether he ever encountered asbestos fibers from products that they manufactured or supplied. They maintain that they manufactured the original products, which were installed a decade or more before Stevens was ever aboard those vessels, and Stevens can only speculate that they manufactured the replacement components he encountered. Stevens counters that he can raise questions of material fact based on his own testimony, Defendants' specifications and manuals, replacement part manuals, and expert opinion.

Under Washington state law, "there is no duty to warn of the dangers of other manufacturers' asbestos products..." and "there [is] no duty to warn with respect to replacement packing and gaskets." *Braaten*, 165 Wash. 2d at 394. If Stevens cannot establish facts beyond mere speculation that he worked with Defendants' asbestos-containing products, summary judgment must be granted. *See Van Hout v. Celotex Corp.*, 121 Wash. 2d 697, 706-07 (1993).

*1. Westinghouse*

The Westinghouse products at issue are marine turbines and forced draft blowers. Westinghouse argues that Stevens cannot establish that he worked with any original asbestos-containing materials sold or distributed by Westinghouse. It maintains that, at most, Stevens

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT
[DKT. #S 141, 145, AND 147] - 5

worked with insulation made, sold, and installed by third parties because it manufactured its draft blowers "bare metal." As Stevens points out, no single piece of evidence places Stevens with Defendants' asbestos-containing products, but the combination of evidence allows for a jury to make that reasonable inference. Stevens points to his Declaration,[4] in which he states he remembers being present during maintenance of the Yellowstone's turbo generators. He also relies on the deposition of his naval expert, Captain William Lowell II, who concluded based on Westinghouse's drawings that "Westinghouse was responsible for the insulation on the turbine generators on the [USS] Yellowstone." Lowell Dep, at 363:7-364:20.

Ultimately, the issue is whether Stevens has provided enough evidence that a reasonable jury could conclude that the asbestos he was exposed to was manufactured by Westinghouse. Stevens distinguishes his case from *Braaten*, which upheld summary judgment when the plaintiff could not show he was exposed to the defendant's asbestos because "he did not work with new pumps" and "there was no way to tell whether and how many times gaskets and packing had been replaced in pumps and valves he worked on." *Braaten*, 165 Wash. 2d at 394. Unlike in *Braaten*, where the defendants did not manufacture the original asbestos insulation applied to their products, Captain Lowell concludes that Westinghouse was responsible for the insulation on the turbine generators. Also, Stevens testified that he would order replacement gaskets and packing for the draft blowers by looking up parts numbers in the manufacturer's booklet. He would then install the parts on the draft blowers. Westinghouse offers no conclusive evidence that all of the original asbestos was completely removed, nor does it offer conclusive evidence that it never applied original or replacement insulation to its draft blowers. Together, these facts

---

[4] Westinghouse and Cleaver-Brooks argue that Stevens' Declaration should be stricken because it is self-serving and contradicts his prior deposition testimony. The Court reminds Plaintiffs' Counsel that this is not the proper way to rehabilitate a witness. The Declaration may be inconsistent, but it is not directly contradictory as Defendants allege. Defendants' Motion to Strike is DENIED.

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT
[DKT. #S 141, 145, AND 147] - 6

support the reasonable inference that Stevens was exposed to Westinghouse's original or replacement asbestos while he served in the Navy or at PSNS.

Although the evidence is circumstantial, it is often necessarily so in asbestos cases. "[I]t is well settled that asbestos plaintiffs in Washington may establish exposure to a defendant's product through direct or circumstantial evidence." *Morgan v. Aurora Pump Co.*, 159 Wash. App. 724, 729 (2011). The combination of Stevens' observation that the material was old and brittle, his testimony that he used Westinghouse's parts manual to order the parts, and Captain Lowell's opinion that Westinghouse was responsible for the original insulation raises a question of material fact. The basis of Stevens' and Captain Lowell's opinions is certainly a ripe area for cross-examination, but it is not a basis for summary judgment.

In the light most favorable to Stevens, Westinghouse was responsible for the original asbestos, there is no concrete evidence that it was all removed, Westinghouse supplied replacement material, and Stevens worked with the old and brittle material. It is reasonable to infer that Stevens worked with Westinghouse's asbestos.

　　　　2. *Warren Pumps, LLC*

Stevens alleges he was exposed to asbestos from Warren's emergency feed and fire and bilge pumps. Like Westinghouse, Warren argues that Stevens relies on mere speculation to prove exposure to its asbestos-containing products. Specifically, it claims that Stevens cannot account for the fact that many of the Warren pumps were installed decades before he ever boarded the vessels and that they had gone through significant overhauls. It also argues that neither Stevens nor Captain Lowell can conclusively say where the replacement packing he worked with came from. Stevens points to evidence that Warren supplied and sold its pumps with original asbestos-containing insulation and packing, Stevens' belief that the old and brittle insulation was original, Captain Lowell's opinion that some of the original insulation remained,

1  and the fact that Warren sold asbestos-containing replacement parts until the early 1980s.

2  Finally, Stevens testifies that he would order replacement parts through the manufacturer's

3  booklet.

4       As is the case with Westinghouse, no single piece of evidence conclusively connects

5  Stevens with Warren's asbestos.  Together, the individual pieces of evidence allow for the

6  reasonable inference that Stevens was exposed to Warren's asbestos-containing equipment or

7  replacement parts that it supplied to the Navy or PSNS.

8       3.  *Cleaver-Brooks, Inc.*

9       Stevens also alleges that he was exposed to asbestos through his work on Cleaver-

10 Brooks' boilers.  Cleaver-Brooks contends that Stevens has no admissible evidence of exposure

11 to its products, nor does he have evidence that the refractory and materials he removed was

12 original or supplied by Cleaver-Brooks.  Stevens claims he worked on Cleaver-Brooks' doors

13 that were accompanied by manufacturer blueprints.  Stevens testifies that he would order

14 asbestos-containing replacement parts from a Cleaver-Brooks catalogue, and he installed them

15 according to Cleaver-Brooks' manuals.

16      Even though Stevens did not have direct knowledge about the entire supply chain, it is a

17 reasonable inference that the replacement parts he ordered and worked with were in fact from

18 Cleaver-Brooks.  Plaintiffs put forth evidence that Cleaver-Brooks was responsible for the

19 original asbestos, and there is no indisputable evidence that it was ever completely removed.

20 Thus, a reasonable inference exists that some of it was still present when Stevens worked aboard

21 the various Navy and PSNS vessels.  As is the case with Westinghouse and Warren Pumps,

22 Stevens has raised a question of material fact as to whether he worked with Cleaver-Brooks'

23 original and replacement parts.

24

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT
[DKT. #S 141, 145, AND 147] - 8

### D. Evidence that Defendants' Asbestos was a Substantial Factor

Cleaver-Brooks also seeks summary judgment on the basis that Stevens cannot establish that exposure to its products was a substantial factor in causing his injury.[5] It argues that even if Stevens was exposed to some level of asbestos, he cannot quantify it or compare it to the threshold necessary for injury. Stevens' expert opines that exposure to each Defendants' individual product was a substantial factor in his disease. She states that his exposure to Cleaver-Brooks' boilers exposed him to concentrations of dust thousands to millions times greater than background levels, and that his exposure would have increased his risk of developing mesothelioma. Viewed in the light most favorable to Stevens, this evidence raises an issue of material fact for the jury. Cleaver-Brooks can explore the basis for the expert's opinion and the quantity of exposure at trial.

### E. Government Contractor Defense

Westinghouse argues that Stevens' claims against it should be dismissed based on the government contractor defense. To satisfy the government contractor defense, a defendant must show that: "(1) the United States approved reasonably precise specifications for the product at issue; (2) the equipment conformed to those specifications and; (3) the supplier warned the United States about the dangers in the use of the equipment that were known to it but not to the United States." *Boyle v. United Technologies Corp.,* 487 U.S. 500, 512 (1988). The defense only applies where there is a "significant conflict" between the tort law plaintiffs seek relief under and the relevant government contract or policy. It is an affirmative defense, and

---

[5] Warren Pumps argues that the "but for" standard for causation applies, but does not explain why the Court should depart from the approved "substantial factor" causation standard approved of in *Mavroudis v. Pittsburgh-Corning*, 86 Wash. App. 22 (1997).

Westinghouse has the burden of showing an absence of a genuine issue of material fact in order to prevail on summary judgment.

Westinghouse cannot carry its burden for all three elements. Regarding the first element, Westinghouse argues that the Navy had incredibly detailed specifications for its warships that had to be followed. This argument misses the mark. In a failure to warn case, the issue is whether the Navy had reasonably precise specifications regarding the supplier's ability to provide warnings to the end users (sailors and boilermakers). *See Willis v. BW IP Intern. Inc.*, 811 F. Supp. 2d 1146, 1154 (E.D. Pa. 2011). Captain Lowell testified that he was unaware of any specifications that would have forbidden Westinghouse from affixing a warning about asbestos to its products or manuals. Stevens also points to other Westinghouse manuals that it drafted and published to the Navy that did include warnings. Questions of fact remain whether the Navy adopted specifications prohibiting asbestos warnings. Westinghouse's inability to prove this element prevents summary judgment based on the government contractor defense.

### F. Assumption of Risk

Finally, Defendants argue that Stevens assumed the risks associated with breathing asbestos fibers. To establish primary assumption of risk, "[t]he evidence must show the Plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Scott v. Pac. W. Mtn. Resort*, 119 Wash. 2d 484, 497 (1992). Assumption of risk is a subjective standard, not an objective one. To prove the first two elements, or Stevens' knowledge of the risk, Defendants must show that Stevens actually and subjectively knew of the facts that a reasonable defendant would know and disclose or all the facts that a personal plaintiff would want to know and consider. *Erie,* 92 Wash. App. at 303-04. To prove Stevens voluntarily decided to encounter the risk, Defendants must show that he elected to encounter that risk despite having a reasonably alternative course of action. *Id.* at 304.

1 Both knowledge and voluntariness are questions of fact for the jury except when reasonable
2 minds could not differ. *Id*. at 303.

3       Stevens argues that Defendants cannot carry their burden because they cannot prove he
4 knew of the specific risk of getting cancer. Defendants argue that Stevens had a full subjective
5 understanding of the specific risk is based on Stevens' testimony that he knew "[d]ust is
6 hazardous" and that "most people [in the Navy] were aware of some of the problems of
7 asbestos." Based on these statements, reasonable minds could certainly differ about whether
8 Stevens fully understood the risks of breathing asbestos. A reasonable jury could find that a
9 person who said something is "hazardous" did not fully understand the serious risk of developing
10 cancer thirty years down the road. Defendants cannot carry their burden on this issue, and the
11 Motion for Summary Judgment on this basis is DENIED.

### III. CONCLUSION

13       Because genuine issues of material fact remain regarding (1) Stevens' contact with
14 Defendants' asbestos-containing products, (2) whether the exposure was a substantial factor for
15 his injury, (3) whether the Navy issued specific instructions about providing warnings, and (4)
16 Stevens' knowledge of the risks, Defendants' Motions for Summary Judgment [Dkt. #'s 141,
17 145, and 147] are **DENIED**.

18       IT IS SO ORDERED.

20       Dated this 19th day of November, 2012.

                                            Ronald B. Leighton
                                            United States District Judge